__NOT FOR PUBLICATION__

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                               :
RICHARD THOMPSON,              :
                               : Civil Action No. 11-4813 (JAP)
            Petitioner,        :
                               :
        v.                     :      O P I N I O N
                               :
CHARLES WARREN,                :
                               :
            Respondent.        :
_____:
```

**APPEARANCES:**

    RICHARD THOMPSON, Petitioner Pro Se
    SBI 00S0158535
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

**PISANO, District Judge**

Petitioner Richard Thompson ("Petitioner"), a federal

prisoner currently confined at the New Jersey State Prison in

Trenton, New Jersey, submitted a petition for a writ of habeas

corpus, pursuant to 28 U.S.C. § 2241,[1] on or about August 22,

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the
Supreme Court, any justice thereof, the district courts
and any circuit judge within their respective
jurisdictions.
    * * *
(c) The writ of habeas corpus shall not extend to a
prisoner unless-... (3) He is in custody in violation
of the Constitution or laws or treaties of the United
States ....

2011, alleging that the United States Parole Commission ("USPC") violated Petitioner's due process rights under the Fifth Amendment in failing to set a final parole date for Petitioner at his last parole hearing and for denying Petitioner his representative of choice.  The named respondent is Charles Warren, Administrator at the New Jersey State Prison, where Petitioner was, and is presently, confined at the time he filed this petition.[2]  On March 14, 2012, the United States Attorney answered the petition, providing the relevant record, on behalf of the respondent and the USPC (hereinafter "the Government").  Petitioner filed a reply on or about April 9, 2012.

For the reasons as set forth below, this petition will be denied.

## I.   BACKGROUND

In 1974, Petitioner was serving an eight-year term under the Youth Corrections Act for rape.  While serving that sentence, Petitioner killed another inmate and was convicted for that murder, by judgment of conviction entered on June 27, 1977 before the United States District Court for the Central District of California.  Petitioner was sentenced to life in prison on the

---

[2]  Petitioner is confined as a contract federal prisoner under 18 U.S.C. § 4002 and § 5003 with the New Jersey Department of Corrections at the New Jersey State Prison in Trenton, New Jersey.  Administrator Warren, as the custodian of Petitioner, is the proper named respondent under 28 U.S.C. § 2243.

murder conviction.  On June 4, 1980, Petitioner was released from
his Youth Corrections Act sentence to serve his consecutive life
sentence.  (Certification of Sharon Gervasoni ("Gervasoni
Cert."), Exhibits 1 and 2).

While incarcerated on his life sentence, Petitioner
committed other offenses for which he was sentenced.  For
instance, on August 2, 1985, Petitioner was sentenced by the
United States District Court for the Southern District of
Illinois to five years for attempted escape and a ten-year
consecutive term for assaulting a federal corrections officer.
(Gervasoni Cert., Ex. 1).  At that time, Petitioner's sentence
made him eligible for parole consideration beginning June 3,
1980.[3]  (Id., Ex. 1 at pg. 3).

In 1992, the USPC conducted its initial parole hearing for
Petitioner.  The USPC denied parole and ordered that Petitioner
serve to a 15-year reconsideration hearing in February 2007.
(Id., Ex. 3).  Petitioner appealed that decision.  On
administrative appeal, the full Commission made the following
modifications on its initial determination:

> The Full Commission has reviewed your appeal and has
> modified your salient factor score, time in custody, and
> guidelines.  The Full Commission finds that you received a
> mandatory parole on a Youth Corrections Act sentence on June
> 4, 1980 to the consecutive adult sentences.  Consequently,

---

[3]  Before the Sentencing Reform Act and imposition of the
Sentencing Guidelines, prisoners sentenced to life imprisonment
under the "old law" were eligible for parole after serving 30
years of any sentence of 45 years or more.

> as of July 1992 you have been in custody on your adult
> sentences only from June 1980 for a total of 145 months.
> All incident reports you received prior to June 1980 are not
> countable towards your current aggregate guidelines.  The
> Full Commission finds that your current offense behavior is
> a category eight murder offense.  While serving this
> commitment you have suffered one attempted escape which
> requires guidelines of 8-16 months.  You have also committed
> four separate category three new criminal conduct in a
> prison facility which required an additional 48-64 months to
> be added to your original guideline range.  You have also
> twice committed category eight attempted murder behavior
> which requires 240 plus months to be added to your original
> guideline range.  Your total aggregate guideline range is
> 476 plus months.

(Gervasoni Cert., Ex. 4).

Thereafter, in 1994, 1996, 1998, 2001 and 2003, Petitioner
received his statutory interim parole hearings.  At each
occasion, the USPC ordered no change in the prior order that
Petitioner serve to a 15-year reconsideration hearing.  (Id.,
Exs. 5-9).  On September 20, 2006, the USPC conducted
Petitioner's 15-year reconsideration hearing de novo.  (Id., Ex.
10 - hearing summary).  After the hearing, the USPC ordered that
Petitioner serve to the expiration of his sentence.  In
particular, the USPC decision stated:

> After review of all relevant factors and information
> presented, a decision exceeding the lower limit of the
> applicable guideline category by more than 48 months is
> warranted based on the following pertinent aggravating case
> factors.  You are a more serious risk than indicated by the
> guidelines.  While serving an 8-year term for rape, you
> murdered an inmate, committed an attempted murder, attempted
> to escape from custody, and assaulted a staff member by
> stabbing him 17 times.  In addition, you incurred other
> disciplinary infractions which include 3 incidents of new
> criminal conduct involving Assaults and Possession of
> Prohibited Weapon, and 32 administrative infractions.
> Although you have not incurred any disciplinary infractions

> since 1985, your criminal history and poor institutional adjustment warrants your [sic] continue to incarceration to your mandatory release date.[4]

(Id., Ex. 11 at pg. 2).  The National Appeals Board affirmed this decision on January 19, 2007.  (Id., Ex. 12).  Another statutory interim hearing was conducted in 2009, and again, the Commission ordered no change.  (Id., Ex. 13).

Petitioner's most recent statutory interim hearing was conducted on March 11, 2011, and it is this hearing that is the subject of this petition.  At the time of the hearing, the USPC was set to expire on October 31, 2011.  The hearing examiner acknowledged that Petitioner had requested that the institution's chaplain appear as his representative, but the New Jersey State Prison, where Petitioner is confined, would not allow the chaplain to appear.  (Id., Ex. 14).  Petitioner did not waive his right to a representative, but he did elect to proceed with his hearing at that time.  The USPC ordered no change from the prior order and Petitioner was ordered to serve to the expiration of his sentence.  (Id., Ex. 15).

Petitioner filed an administrative appeal protesting the denial of a representative of his choice.  He also argued that he was entitled to a final release date under the Sentencing Reform Act.  (Id., Ex. 16).  In a letter dated June 21, 2011, the National Appeals Board extended the appeal deadline to allow

---

[4]   It appears that Petitioner's mandatory release date is February 3, 2017.

Petitioner's chaplain  to submit information on Petitioner's

behalf.  (Id., Ex. 17).  Petitioner responded, saying that he

"can not offer an explanation as to what his representative would

have said since his (representative) explanation would have been

based on his own personal insight into petitioner's character

based on his personal observations of petitioner on an almost

daily basis."  Petitioner further stated that his representative

is prohibited by the New Jersey State Prison administration from

offering any information or argument on Petitioner's behalf, and

Petitioner's right to have a representative of his choice should

not be denied simply because the Federal Bureau of Prisons

contracted Petitioner to a state facility to serve his sentence.

(Id., Ex. 18).  On July 21, 2011, the National Appeals Board

affirmed the USPC's decision that Petitioner serve to the

expiration of his sentence.  (Id., Ex. 19).  In particular, the

Board found:

> You are not entitled to a final release date under the terms
> of Section 235(b)(3) of the Sentencing Reform Act.  That
> provision, winding up the affairs of the Parole Commission,
> was mooted by subsequent amendment.
>
> As for the representation issue, an inmate's right to
> representation of choice is not absolute.  You did not
> refuse to go forward with the hearing despite the state
> prison's rejection of your request to be represented by your
> chaplain.  Furthermore, you have not proffered any facts or
> issues which your chaplain would have contributed to your
> parole consideration, despite the Commission's specific
> invitation (by letter dated June 21, 2011) that you do so.
> Therefore, the Commission does not find you were harmed by
> the prison's refusal to allow the chaplain to be present.
> If there was any error, it was harmless.

(Id., Ex. 19).

Thereafter, Petitioner filed this application for habeas relief on or about August 22, 2011.  The Government filed a response, with the relevant record, on March 14, 2012. Petitioner filed a reply on April 9, 2012.

## II.   CLAIMS PRESENTED

Petitioner asserts the following grounds for habeas relief:

A.   Petitioner's due process rights were violated when the USPC violated the Sentencing Reform Act, codified at 18 U.S.C. § 3551, et seq., by failing to give Petitioner a release date.

B.   Petitioner's due process rights were violated when the USPC violated its own procedures by acquiescing to the state prison administration denying Petitioner representation.

## III.   DISCUSSION

### A.   Failure to Set a Final Release Date

Petitioner claims that the USPC violated section 235(b)(3) of the Sentencing Reform Act ("SRA"), as originally enacted in 1984 and referred to as a "winding down" provision, and which provides:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction a day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable guideline.  A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

Sentencing Reform Act of 1984, Pub.L. No. 98-473, § 235(b)(3), 98

Stat.2032 (1984) (prior to 1987 amendment).[5]   Even though

Congress has repealed section 235(b)(3), it continues to control

this pre-Sentencing Guidelines case.

The United States Court of Appeals for the Third Circuit

discussed the application of this provision, as follows:

> When Congress enacted section 235(b)(3) the Parole
> Commission was scheduled to expire five years after the
> effective date of the Sentencing Reform Act and thus it is
> clear that Congress contemplated that the Parole Commission
> should not expire without setting release dates for
> prisoners within its jurisdiction.  Though the phrase "early
> enough to permit consideration of an appeal of the release
> date" obviously is not precise, it is applied to require
> that between three to six months before the date of its
> expiration, a date that has been extended several times, the
> Parole Commission must set a release date which, of course,
> could be scheduled for long in the future.  See 28 C.F.R. §
> 2.64(b)(1996)("The release dates required by section
> 235(b)(3) need not be set any earlier than the time required

---

[5]   The Sentencing Reform Act (SRA) of 1984 provided for the
total revamping of sentencing procedures in the federal system.
Walden v. U.S. Parole Comm'n, 114 F.3d 1136, 1138 (11th Cir.
1997).   It replaced a system of indeterminate sentences and the
possibility of parole with determinate sentences and no parole.
Hackley v. Bledsoe, 2009 WL 585505, at *2 (M.D.Pa. Mar.6,
2009)(citing Walden v. U.S. Parole Comm'n, 114 F.3d 1136, 1138
(11th Cir. 1997)).   "Inasmuch as there will be no parole for
those convicted after the effective date of the SRA, the Act
abolishes the Parole Commission, and repeals most of the pre-
existing statutory framework governing parole of federal
prisoners."  Id.   Section 235 of the SRA (set out as a note to 18
U.S.C. § 3551), however, "saves" the Commission and the parole
statutes for a period of time during which the transition to the
new system will occur.  Id.   The parole transition sections apply
to offenses committed before the SRA's effective date.  Lyons v.
Mendez, 303 F.3d 285, 288 (3d Cir. 2002).   Here, Petitioner was
convicted of offenses that he committed prior to the SRA's
effective date.  Thus, the parole statutes continue to apply to
his case.

to allow an administrative appeal within the ten-year period, i.e., three to six months before the end of that period."); Lightsey v. Kastner, 846 F.2d 329, 332 (5th Cir. 1988).

Furnari v. United States Parole Commission, 531 F.3d 241, 248 (3d Cir. 2008).

Congress has repeatedly extended the USPC since the SRA was enacted. Section 235(b)(1)((A), 98 Stat. 2032, kept the USPC in existence for five years after the November 1, 1987 effective date of the SRA, until October 31, 1992, to allow the USPC to process cases of prisoners convicted of crimes committed before the effective date of the SRA, who would still be incarcerated after that date. See Romano v. Luther, 816 F.2d 832 (2d Cir. 1987). This initial five-year extension was subsequently extended by Congress numerous times to 26 years. In fact, relevant here, on August 2, 2008, Congress extended the USPC for three more years, until October 31, 2011, by the United States Parole Commission Extension Act of 2008. Pub.L. 110-312, 122 Stat. 3013 (Aug. 12, 2008). Most recently, on October 21, 2011, Congress extended the USPC for two additional years, until October 31, 2013, by the United States Parole Commission Extension Act of 2011. Pub.L. 112-44, 125 Stat. 532 (Oct. 21, 2011).

The Government contends that, because Congress has extended the existence of the USPC until October 31, 2013, it is not in its final "winding up" period, and thus, Section 235(b)(3) does

not require that the USPC set a final release date for

Petitioner.

This Court agrees.  On this point, the Third Circuit's

opinion in Furnari is instructive.  As the Third Circuit stated:

> ... inasmuch as section 235(b)(3) still requires that the
> Parole Commission before its expiration set dates for
> release early enough for appeals for prisoners still within
> its jurisdiction one day before its expiration, as of now no
> later than three to six months prior to October 31, 2008, it
> should set release dates for prisoners who will be within
> its jurisdiction one day before that date.  See United
> States ex rel. D'Agostino v. Keohane, 877 F.2d 1167, 1172
> (3d Cir. 1989). Nevertheless, the Parole Commission does not
> have to act before the expiration of the three- to six-month
> period, and if it does choose to act before or during the
> three- to six-month period, it is free later to set release
> dates beyond October 31, 2008.  See id.
>
> Here, on July 8, 2005, the Parole Commission denied Furnari
> parole and adhered to the rehearing date it had set for 2011
> and thus it cannot be said that it set a release date in the
> three- to six-month period before October 31, 2005, when,
> prior to its latest extension, it was scheduled to expire.
> Though the Parole Commission's failure to set a release date
> might have been problematical, Congress eliminated, or at
> least postponed, the problem when on September 29, 2005, it
> extended the life of the Parole Commission to October 31,
> 2008, when it now will expire unless, as the Government
> contemplates will happen, Congress extends its life.

Furnari, 531 F.3d at 248-49.

Here, the USPC denied Petitioner parole, deciding to

continue Petitioner' confinement until the expiration of his

sentence in 2017.  It has scheduled a statutory interim hearing

for Petitioner in March 2013.  Thus, although the USPC did not

set a release date in the three to six months before the then-

scheduled expiration date of October 31, 2011, the USPC's

"failure" to do so is not actionable at this time because

10

Congress has extended the life of the USPC to October 31, 2013.

See Furnari, supra.   Petitioner's next rehearing date is

scheduled for March 2013, six months before the statutory

expiration of the USPC on October 31, 2013.  Accordingly, this

Court will dismiss Petitioner's action without prejudice to

Petitioner filing a new habeas action at the end of the three-to-

six month period prior to October 31, 2013, if the USPC by that

time has not set a release date for him.  See Furnari, 531 F.3d

at 249.

B.  Representative Claim

Petitioner next argues that he was denied due process when

his request to allow his chaplain to represent him at his parole

hearing was denied.  This claim will be denied for lack of merit.

Petitioner does not have a constitutional right to a

representative at a parole hearing.  The Supreme Court has held

that a parole statute might be so drafted as to entitle a

prisoner "to some measure of constitutional protection," but the

Court rejected the suggestion that parole hearings should be

full-scale adversary hearings.  Greenholtz v. Inmates of the

Nebraska Penal and Correctional Complex, 442 U.S. 1, 12, 14

(1979).  Instead, the Supreme Court found that due process

requires simply that the inmate has an opportunity to be heard (a

parole hearing) and a statement of the reasons for denial of

parole.  Id. at 16.  See also Toolasprahad v. Grondolsky, 570 F.

Supp.2d 610, 619 (D.N.J. 2008).

11

Moreover, to the extent that the federal parole statute does permit an inmate to be represented at his parole hearing under 18 U.S.C. § 4208(d)(2), Petitioner's inability to have his chaplain be his representative at his statutory interim hearing did not rise to the level of a unconstitutional due process violation. First, it was not the USPC, but rather the state prison administration, that denied Petitioner's chaplain to represent Petitioner at his federal parole hearing.  Second, the USPC offered Petitioner the opportunity to postpone his hearing to try to work out a solution with the state prison administration, but Petitioner chose to go forward with his hearing.

In addition, on his administrative appeal, Petitioner was allowed to proffer evidence as to what the chaplain would have said on Petitioner's behalf, but neither Petitioner nor the chaplain provided anything in response.  It is likely that the chaplain would have supported Petitioner in demonstrating that he has had a change in character and no disciplinary infractions since 1985.  However, these factors were clearly considered during his hearing.  Thus, this Court finds no prejudice to Petitioner in not having his chaplain attend his parole hearing as his representative, and accordingly, his habeas petition will be denied for failure to state a due process violation.  See Furnari, 531 F.3d 241.

12

## CONCLUSION

For the foregoing reasons, this habeas petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, will be denied without prejudice.  Petitioner's motion for an Order granting habeas relief (Docket entry no. 9) will be denied as moot.  An appropriate Order accompanies this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge


Dated: October 12, 2012